UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

UNITED STATES OF AMERICA     )
                                  )
         vs.                ) CAUSE NUMBER 3:09-CR-149(01)RM
                                    )
JAKE RICHARDSON III          )

<u>OPINION AND ORDER</u>

Jake Richardson moves to suppress statements and evidence flowing from the stop of the vehicle he was driving. For the reasons that follow, the court grants the motion in part and denies it in part.

I

At 12:47 a.m. on November 5, 2009, LaPorte County Police Deputy Dallas Smythe clocked a Buick as traveling eighty miles per hour in a fifty-five miles per hour zone. Deputy Smythe stopped the Buick and asked driver Jake Richardson and passenger Antonio Young for identification. Mr. Richardson was driving with a valid learner's permit; Mr. Young had a valid driver's license. Deputy Smythe spoke to Mr. Richardson and Mr. Young and noted that they both acted nervous; Mr. Richardson volunteered that he was trying to get Mr. Young home because Mr. Young was sick (which struck Deputy Smythe as strange, because Deputy Smythe hadn't asked anything that might prompt such an answer). Deputy Smythe returned to his marked vehicle to conduct a license check and noticed that Mr. Richardson and Mr. Young were moving around in the Buick and looking back at Deputy Smythe. Deputy Smythe called for backup.

The county police department had outfitted its marked cars with audio- and video-recording equipment in the two weeks before the stop, and glitches were common. The camera and in-car audio on Deputy Smythe's car were working, but his body microphone wasn't working.

Deputy Smythe was a K-9 officer with a German Shepherd named Marko. Marko had graduated from Midwest K-9 Training, Inc. in May 2008. Marko and Deputy Smythe were certified in Basic Police K-9 Patrol and Narcotics work. Midwest K-9 Training recertified Deputy Smythe and Marko in 2009. Marko's formal training didn't include night-time work along a busy highway. Deputy Smythe has continued in training with Marko for the last two years, maintaining a training log for the last year. When things are quiet on Deputy Smythe's midnight shift, he sometimes works with Marko. Marko has alerted, and not alerted, during walkarounds with traffic going by.

Deputies Adam Hannon and Lowell Boswell joined Deputy Smythe to assist. The camera system on their car worked imperfectly, too: the audio would cut in and out. Deputy Smythe conducted an "outer free air search of the vehicle" (a walk twice around the Buick) with Marko. The dog alerted passively (by sitting down) at the driver side door and on the passenger side door. Deputy Smythe returned Marko to the police car and told the Buick's occupants that he had probable cause to search the car. He asked Mr. Richardson and Mr. Young to get out of the car. Deputy Smythe asked to conduct a vehicle search; Mr. Richardson said there was nothing in the vehicle and that he had no objections to a search.

The video recording by Deputy Smythe's automatic on-car camera shows Deputy Smythe at the Buick's window for a little over a minute after the stop. Deputy Smythe was in the car for ten to eleven minutes after returning to his car. He returned to the Buick's driver window for slightly more than half a minute, then returned to his car for the dog. Marko alerted for the first time in less than one minute.

Deputy Smythe conducted a patdown search of Mr. Richardson's outer clothing and found a large bundle of cash in the left front pants pocket and a bag containing a white rock-like substance in his right side cargo pants pocket. Deputy Smythe asked what the rock-like substance was, and Mr. Richardson said that he got him and "you know what it is." Deputy Smythe then placed Mr. Richardson in restraints and detained him. Deputy Smythe didn't read Mr. Richardson his <u>Miranda</u> rights because he didn't plan to interrogate him. He did, though, ask Mr. Richardson why Mr. Richardson's sweater smelled like marijuana, and Mr. Richardson said he'd been with some people who were smoking marijuana.

As he was being handcuffed, Mr. Richardson said he had access to a lot more cocaine and marijuana and "would do anything to make this go away." Deputy Smythe asked if Mr. Richardson wanted him to contact someone to speak with, and Mr. Richardson said he did. Mr. Richardson made other incriminating statements while restrained. He said he could obtain large quantities of cocaine and that a person met him in a parking lot in Merrillville in an U-haul truck with

cocaine but Mr. Richardson didn't take the delivery due to lack of funds. Mr. Richardson was placed in the squad car.

Deputy Smythe contacted Detective Sergeant Timothy Shortt, Commander of the LaPorte Metro Narcotics Unit, to explain what he had and requested his assistance. The officers searched the Buick after Mr. Richardson and Mr. Young were handcuffed and detained, but found nothing else.

While Deputy Smythe contacted Detective Sergeant Shortt, Mr. Richardson sat in the back seat of the Boswell/Hannon car, with Deputy Boswell standing outside. Mr. Richardson asked several times for Deputy Boswell to open the door so Mr. Richardson could speak with him. Deputy Boswell got cold while waiting outside and got into his car, where Mr. Richardson sat. Mr. Richardson told Deputy Boswell he could get lots of cocaine from a mall in Merrillville where people were coming with a U-Haul truck.

Detective Sergeant Shortt arrived and Deputy Smythe filled him in on what had happened. Deputy Smythe said, at one point, "you wanted a name, I got a name," but the context of that statement is unclear from the recording from the Boswell/Hammon car. Deputy Smythe said, "I stopped asking questions because I had what I had and didn't want to Mirandize him."

Detective Sergeant Shortt approached Mr. Richardson in the squad car and asked "How are you?" Mr. Richardson asked, "Are you the guy we're waiting on?" and Detective Sergeant Shortt said he was. Mr. Richardson told Detective Sergeant Shortt he could buy a lot of cocaine from a man in Michigan City. Mr. Richardson

also told Detective Sergeant Shortt that he was supposed to pick up a large amount of marijuana and cocaine from a man in Merrillville that was to be delivered the previous Saturday in an U-Haul, but the deal didn't go down. Mr. Richardson said he was to pick up a couple of kilos of cocaine the coming Sunday from a man and he would get the cocaine for the police. Mr. Richardson said Mr. Young had been driving when Mr. Richardson picked up the cocaine that was found on him, but that he (Mr. Richardson) had taken over the driving when Mr. Young got sick. Detective Sergeant Shortt asked Mr. Richardson where he got the crack he was carrying and Mr. Richardson said he bought it in South Bend.

Detective Sergeant Shortt notified Al Schurz of the Michigan City Narcotics Division to explain what he had. After that conversation, Mr. Richardson and Mr. Young were transported to Laporte County Jail for booking. Jail staff searched Mr. Richardson when got to the jail and found a second bag of the rocky substance. An information alleging possession of cocaine with intent to deliver was filed in Superior Court on November 5. A warrant for Mr. Richardson's was issued November 6.

Mr. Richardson was interviewed on November 9. The government agrees with Mr. Richardson that the content of that conversation must be suppressed, so the court addresses that interview no further.

II

Everyone agrees that this stop and patdown were permissible, if at all, under Terry v. Ohio, 392 U.S. 1, 30 (1968). Mr. Richardson argues that detaining the Buick to allow Marko's walkaround was unreasonable, and further argues that the patdown was unreasonable. An officer conducting an investigatory stop may conduct a protective search of a person's exterior clothing for "the discovery of weapons which might be used to harm the officer or others nearby." Id. at 26. If, in the course of such a patdown, the officer "feels an object whose contour and mass makes its identity immediately apparent" and "if the object is contraband, its warrantless seizure [is] justified." Minnesota v. Dickerson, 508 US 366, 375-376 (1993). Mr. Richardson argues that Deputy Smythe didn't articulate any reasonable suspicion that Mr. Richardson might have been armed and dangerous. He says Deputy Smythe had no basis to fear for his safety: Mr. Richardson complied with all his requests, didn't threaten him, answered his questions, didn't try to flee and gave him permission to search the car. He further says that the identity of the contraband wasn't immediately apparent by the patdown search because the officer had to pull the item out of Mr. Richardson's clothing and ask him what it was. Mr. Richardson argues that his statements to Deputy Smythe, Deputy Boswell, and Detective Sergeant Shortt must be suppressed because they resulted from custodial questioning without advise of his rights under Miranda v. Arizona, 384 U.S. 436 (1966). The patdown and questioning resulted in Mr. Richardson's arrest and transport to the county jail where another bag of rock-like

substance was discovered. That discovery, Mr. Richardson argues, is the fruit of the poisonous tree, and must be excluded.

A

The use of the police dog to conduct a walkaround sniff didn't violate Mr. Richardson's Fourth Amendment rights because the dog sniff didn't extend the duration of the lawful traffic stop unreasonably. The dog already was at the scene, so Mr. Richardson didn't have to wait for the dog to arrive. There was at most a two minute delay beyond the traffic stop, and that delay was justified by Deputy Smythe's seeing the Buick's occupants acting nervous and fidgety and looking back at the police car while Deputy Smythe ran the license check.

"A seizure that is justified solely by the interest in issuing a warning ticket to the driver can become unlawful if it is prolonged beyond the time reasonably required to complete that mission." Illinois v. Caballes, 543 U.S. 405, 407 (2005). "It is well-established that a canine sniff of the exterior of a vehicle for narcotics does not implicate Fourth Amendment concerns, providing that the individual is lawfully detained at the time of the sniff." United States v. Johnson, No. 07-30078, 2008 WL 187559, at *12 (C.D. Ill. Jan. 18, 2008) (*citing* Illinois v. Caballes, 543 U.S. 405 (2005)). The Caballes Court "rejected the notion that 'the shift in purpose' 'from a lawful traffic stop into a drug investigation' was unlawful because it 'was not supported by any reasonable suspicion.'" Muelher v. Mena, 544 U.S. 93, 101 (2005) (*citing* Illinois v. Caballes, 543 U.S. at 408).

A five to ten minute detention for a traffic violation may be reasonable, while a fifteen-minute detention might not. *See e.g.*, <u>United States v. Garrett</u>, 139 Fed.App. 720, 723 (7th Cir. 2005) (unpublished) (stating if the dog alerted within 5 to 10 minutes of the defendant being pulled over, that would likely be a reasonable amount of time for the officer to still be responding to the traffic violation, but a 15 minute stop to issue a ticket or citation may be unreasonable).

The delay in this case is similar to <u>United States v. Carpenter</u>, 406 F.3d 915 (7th Cir. 2005), in which one officer arrived with a drug detection dog while another officer was giving the defendant a ticket for evading a red light. The court noted that a delay of up to five minutes for a dog to arrive constituted a "modest incremental delay for a person already lawfully arrested" that couldn't be characterized as "unreasonable." <u>Id.</u> at 916-917. The court in <u>United States v. Childs</u>, 277 F.3d 947 (7th Cir. 2002) (*en banc*), observed that because traffic stops based on probable cause are arrests, the Fourth Amendment doesn't mandate the release of such arrestees at the earliest possible moment. <u>Id.</u> at 953-954. In <u>United States v. Johnson</u>, 2008 WL 187559, at *4-5 (C.D. Ill. 2008), the court stated that on a probable cause stop, no bright-line rule makes any detention after the issuance of a ticket unreasonable. "The issue is whether the total period of seizure is unreasonable." 2008 WL 187559, at *5 (finding that five minutes between the time the defendant signed the ticket and the completion of the canine sniff wasn't unreasonable).

"When an officer has reasonable suspicion that an occupant of the vehicle is engaged in illegal drug activity in addition to that which justified a traffic stop, the officer may prolong the stop to investigate that activity." United States v. Allen, No. 05-012-CR-01-T/N, 2005 WL 4882723, at *10 (S.D. Ind. Aug. 19, 2005) (citation omitted) (finding the following behavior suspicious: "turning around during the license check, looking around nervously, removal of the cell phone from the glove box, and . . . volunteering that any search of the Buick would be an illegal search despite not yet having been asked to permit such a search.").

Deputy Smythe added about two minutes to this stop when he brought Marko from his car for the walkaround. That conduct didn't convert the stop into one of unconstitutional duration.

B

A "stop and frisk" under the principles of Terry v. Ohio, 392 U.S. 1 (1968), may be conducted without violating the Fourth Amendment's ban on unreasonable searches and seizures if two conditions are met: (1) the investigatory stop (temporary detention) must be lawful — detaining an automobile and its occupants pending inquiry into a vehicular violation, and (2) to proceed from a stop to a frisk (patdown for weapons), the officer must reasonably suspect that the person stopped is armed and dangerous. Arizona v. Johnson, 129 S. Ct. 781, 784 (2009). The test is an objective one. Terry v. Ohio, 392 U.S. 1 (1968); *see also* United States v. Barnett, 505 F.3d 637, 639 (7th Cir. 2007) ("[T]he test for

reasonable suspicion . . . is an objective one."). "<u>Terry</u> established the legitimacy of an investigatory stop 'in situations where [the police] may lack probable cause for an arrest.'" <u>Arizona v. Johnson</u>, 129 S. Ct. at 786 (*citing* <u>Terry</u>, 392 U.S. at 24).

That the test is an objective one resolves some of Mr. Richardson's argument. Mr. Richardson challenged the quality of the patdown that Deputy Smythe performed, and presented expert testimony that Deputy Smythe's performance fell short of officer safety requirements. Mr. Richardson points to that evidence to contend that if Deputy Smythe truly felt threatened or at risk by the possible presence of a weapon on Mr. Richardson's person, Deputy Smythe would have conducted a far different patdown. Perhaps so, but the issue is an objection one, not what the officer subjectively believed.

"[I]n a traffic-stop setting, the first <u>Terry</u> condition - a lawful investigatory stop — is met whenever it is lawful for police to detain an automobile and its occupants pending inquiry into a vehicular violation." <u>Arizona v. Johnson</u>, 129 S. Ct. at 784. To frisk an individual, however, the officer "must harbor reasonable suspicion that the person subjected to the frisk is armed and dangerous." <u>Arizona v. Johnson</u>, 129 S. Ct. at 784. "The officer need not be certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others might be in danger." <u>United States v. Thomas</u>, 512 F.3d 383, 388-389 (7th Cir. 2008) (finding reasonable an officer's pat-down search and then seizure of hard object that officer believed to be drugs). The court examines the totality of the circumstances,

including the "experience of the law enforcement agent and the behavior and characteristics of the suspect." United States v. Jackson, 300 F.3d 740, 745-746 (citations omitted); *see also* United States v. Oglesby, – F.3d –, 2010 WL 785868, *2 (7th Cir. 2010) ("Determining whether an officer had a reasonable suspicion is assessed considering the totality of the circumstances and common-sensical judgments and inferences about human behavior.") (citation omitted). Nervousness or refusal to make eye contact alone won't justify a Terry stop and pat-down, but such behavior may be considered as a factor in the totality of circumstances. United States v. Brown, 188 F.3d 860, 865 (7th Cir. 1999) (citations omitted) (finding that the totality of circumstances also included the defendant's repeated glances back towards the car in question while its occupants rolled down the tinted windows); United States v. Oglesby, 2010 WL 785868, *3 ("[N]ervous or evasive behavior is a pertinent factor in determining reasonable suspicion.") (citation omitted).

"[T]he search must be confined in scope to an intrusion reasonably designed to discover guns, knives, clubs, or other hidden instruments for the assault of the police officer." United States v. Jackson, 300 F.3d 740, 746 (7th Cir. 2002) (citation omitted). An officer can't conduct a general exploratory search for evidence under the guise of a stop-and-frisk, United States v. Brown, 188 F.3d 860, 866 (7th Cir. 1999) (citations omitted) (holding that the search was reasonable in scope because it was reasonable for the officer to think that the hard object in the defendant's pocket was a gun, even though it turned out to be

drugs), but an officer conducting a pat-down "may seize nonthreatening contraband that is detected . . . ." <u>United States v. Hernandez-Rivas</u>, 348 F.3d 595, 599 (7th Cir. 2003) (*citing* <u>Minnesota v. Dickerson</u>, 508 U.S. 366, 373-374 (1993)). "The contraband may be detected either because it is in plain view or because the officer detected it by touch." <u>United States v. Hernandez-Rivas</u>, 348 F.3d at 599 (*citing* <u>Minnesota v. Dickerson</u>, 508 U.S. at 375-376).

In <u>Minnesota v. Dickerson</u>, 508 U.S. 366 (1993), the court suppressed the evidence found during an officer's search because the "officer's continued exploration of respondent's pocket after having concluded that it contained no weapon was unrelated to the sole justification of the search under <u>Terry</u> . . . the protection of the police officer and others nearby." <u>Id.</u> at 378 (internal quotations, brackets and citation omitted). It therefore amounted to the sort of evidentiary search that <u>Terry</u> expressly refused to authorize. <u>Id.</u> The officer determined that the lump was contraband only after squeezing, sliding and otherwise manipulating the contents of the defendant's pocket, which the officer already knew contained no weapon. <u>Id.</u>

> If a police officer lawfully pats down a suspect's outer clothing and feels an object whose contour or mass makes its identity immediately apparent, there has been no invasion of the suspect's privacy beyond that already authorized by the officer's search for weapons; if the object is contraband, its warrantless seizure would be justified by the same practical considerations that inhere in the plain-view context.

508 U.S. at 375-376. The Fourth Amendment requires the officer to have probable cause that the object is contraband before seizing it. <u>Minnesota v. Dickerson</u>, 508

U.S. at 376; *see also* <u>United States v. Rivers</u>, 121 F.3d 1043, 1047 (7th Cir. 1997) (distinguishing <u>Dickerson</u>, reasoning that in <u>Dickerson</u>, the seizure was constitutionally invalid because the officer continued to manipulate the lump in the defendant's pocket to determine its nature even after concluding it wasn't a weapon, but in this case "there was no impermissible further searching, as [the officer] recognized the incriminating nature of the contraband immediately."); *see also* <u>United States v. Robinson</u>, No. 1:08-cr-74, 2009 WL 2106147, at *11 (N.D. Ind. July 13, 2009) (finding that the search was more similar to <u>Rivers</u> than to <u>Dickerson</u>).

Deputy Smythe had reasonable suspicion to pat down Mr. Richardson. When Deputy Smythe stopped the vehicle he spoke to Mr. Richardson and Mr. Young and noted that they "both appeared to be extremely nervous", were "short with the answers" and "appeared to be nervous and fidgeted around." Mr. Richardson and Mr. Young repeatedly looked back to the police car and appeared to fidget around while Deputy Smythe was in his car running the check on the licenses. In the ensuing walkaround search, Marko alerted to drugs on both the driver and passenger side of the car. "Guns are among the tools of the drug trade." <u>United States v. Askew</u>, 403 F.3d 496, 508 (7th Cir. 2005) (internal quotations and citations omitted).

Deputy Smythe felt a hard object in Mr. Richardson's front left pocket and removed it — a bundle of cash. Seizure of the cash is questionable because it is unclear whether the officer believed the object was a weapon or contraband.

Deputy Smythe continued the patdown and felt a hard object in a right side pocket that he believed might be a weapon. Upon removing that hard object, it appeared to be a package of drugs. It was appropriate for Deputy Smythe to remove the item if he believed it was a weapon and then to seize it upon recognizing it as contraband. Mr. Richardson was then placed under arrest, leading to the unavoidable conclusion that even if the cash was pulled from Mr. Richardson's pocket unreasonably at the side of the highway, it inevitably would have been discovered (as were more drugs) when Mr. Richardson arrived at the police station.

C

A statement made during a custodial interrogation by a person who has not been informed of, and waived, his privilege against self-incrimination and his right to counsel isn't admissible in a criminal proceeding. Miranda v. Arizona, 384 U.S. 436 (1966). The suspect must be both in custody and subject to interrogation to trigger the Miranda warning requirement. Miranda v. Arizona, 384 U.S. at 467 Custodial interrogation is the "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." Miranda v. Arizona, 384 U.S. at 444.

When deciding whether a defendant was in custody, the court looks to the totality of the circumstances and asks whether a reasonable person in the defendant's "position would have felt at liberty to terminate the interrogation and

leave." A.M. v. Butler, 360 F.3d 787, 795-796 (7th Cir. 2004) (internal quotation and citation omitted). "[T]he initial determination of custody depends on the objective circumstances of the interrogation . . . ." Stansbury v. California, 511 U.S. 318, 323 (1994). A person is in custody for Miranda purposes "if he is subject to a restraint on freedom of movement of the degree associated with a formal arrest." United States v. Wyatt, 179 F.3d 532, 535 (7th Cir. 1999) (internal quotation marks and citation omitted). Our court of appeals has explained:

> In order to establish a custodial relationship, a defendant must either show that he or she was formally arrested, or that he or she was subjected to restraints of freedom such that the conditions of a formal arrest were closely approximated or actually attained.... In the latter case, the test is not whether the defendant was under a subjective belief that his or her movements were restricted, but whether a reasonable person in the defendant's position would believe that he or she was free to leave.

United States v. Lennick, 917 F.2d 974, 977 (7th Cir.1990) (citations omitted). Courts weigh such factors as the length of the interrogation, the purpose of the questioning, and the location of the interrogation. United States v. Lennick, 917 F.2d at 977.

A person temporarily detained for a traffic violation isn't "in custody" for Miranda purposes. Berkemer v. McCarty, 468 U.S. 420, 440 (1984). But if a motorist detained at a traffic stop is later subjected to treatment that renders him "in custody" for practical purposes, he is then entitled to the full panoply of projections prescribed by Miranda. Berkemer v. McCarty, 468 U.S. at 440.

In <u>United States v. Murray</u>, 89 F.3d 459 (7th Cir. 1996), officers stopped a car for failure to display license plates after suspecting the occupants of purchasing drugs. The officers saw the defendant try to conceal something in the car and discovered four small baggies of what appeared to (and was later found to be) user-quantity crack cocaine. <u>Id.</u> at 461. The defendant, who was the driver, had no drivers licence or other identification and became verbally combative, so he was placed in the squad car. An officer at the scene retrieved a firearm from under the front passenger seat and showed the gun to the defendant and asked if he knew who owned it. <u>Id.</u> The defendant said he didn't know, but then said he owned the car and no one else had driven it that day. <u>Id.</u> The defendant was arrested. <u>Id.</u> The defendant argued that his statements should be suppressed because they were obtained in violation of his <u>Miranda</u> rights. <u>Id.</u> The court found no evidence in the record to support the defendant's contention that his freedom of movement was restrained, before the question, in a manner equivalent to that associated with a formal arrest. <u>Id.</u> at 462. The court noted:

> Only a brief period of time had elapsed between the initial stop and the time [the defendant] was asked the questions. The encounter took place on a lighted street in an urban area in public view. There [was] no evidence that the police officers engaged in conduct which might have overborne [the defendant's] will. . . . [N]either officer informed [the defendant] that he was under arrest . . . .

<u>Id</u>. at 462. "<u>Miranda</u> warnings are not required simply because questioning is conducted in a certain place, or because the person being questioned is suspected of having committed an offense." <u>Id.</u> (citation omitted). The court held that a

reasonable person in the defendant's position wouldn't have considered the brief questioning at the scene to be custodial interrogation. Id.; *see also* United States v. Kelly, 991 F.2d 1308, 1311-1313 (7th Cir. 1993) (the roadside questioning of a driver stopped for speeding, after an officer found drug paraphernalia and marijuana residue in the car, didn't constitute "custodial interrogation" for Miranda purposes).

i.

Mr. Richardson wasn't in custody up to and during the patdown search. The court of appeals has rejected the argument that a reasonable person subject to a patdown wouldn't feel free to leave. United States v. Wyatt, 179 F.3d 532 (7th Cir. 1999) (*citing* Yusuff, 96 F.3d at 988); *see also* United States v. Burns, 37 F.3d 276, 281 (7th Cir.1994) ("[T]his court has held that *Miranda* warnings are not required where a suspect has been detained pursuant to a *Terry* investigatory stop."). After Deputy Smythe removed the alleged bag of drugs from Mr. Richardson's pocket, he asked "What is this?" suspecting that it was drugs. The question was reasonably likely to elicit an incriminating response and did so — Mr. Richardson responded, "You know what it is." At the point the officer removed the bag from the defendant's pocket and knew it wasn't a gun, the Terry stop had ended.

The government cites United States v. Yusuff, 96 F.3d 982, 988 (7th Cir. 1996) for the proposition that Mr. Richardson wasn't in custody when the officer asked "What is this", but that case is readily distinguishable. In Yusuff, the officer

performed a consensual patdown in a busy, public concourse of Chicago's O'Hare International Airport. Moments before the patdown, officers told the defendant that she was not under arrest and was free to leave. During the patdown, the officer felt a lump in the defendant's pocket and asked her what it was. Id. At the time, the officer didn't know it was drugs. Id. The court held that "[m]erely by asking what the lump was did not turn the consensual encounter into a 'custodial interrogation.'" Id. "We believe that a reasonable person, after consenting to a brief pat down search in a busy airport, would not believe themselves in custody if an officer felt a lump (e.g., a back brace or purse) and asked what it was." Id. The officer's question - "What's this" — didn't require the Miranda warnings. Id.; *see also* United States v. Wyatt, 179 F.3d 532, 537 (7th Cir. 1999) (finding no custodial interrogation where the defendant was questioned in a well-lit public place during a consensual encounter and was subjected to a brief pat-down but never physically restrained).

The patdown of Mr. Richardson wasn't consensual, and these circumstances existed before the patdown: (1) Deputy Smythe had asked Mr. Richardson to get out of the Buick; (2) Deputy Smythe had told Mr. Richardson that the police dog was trained in the "odors of narcotics" and had alerted to the vehicle, (3) other police units were present, and (4) Deputy Smythe told Mr. Richardson that he had probable cause to search the vehicle. Further, Deputy Smythe didn't ask Mr. Richardson what was in the bag until after he had pulled it out of Mr. Richardson's pocket and knew that it was likely drugs.

In <u>United States v. Allen</u>, No. 05-012-CR-01, 2005 WL 4882723 (S.D. Ind. Aug. 19, 2005), the defendant was pulled over for speeding, but the officers had reasonable suspicion to believe that the defendant was engaged in drug activity. <u>Id.</u> at 3. Before reading the defendant his <u>Miranda</u> rights, the officers asked the defendant questions about narcotics activities, the vehicle's contents and whether there were any drugs in the vehicle at which time the defendant made repeated statements that "It's there, it's there, it's inside the vehicle." <u>Id.</u> at 12. The court found that the statements should be suppressed because both officers testified that the defendant wasn't free to leave at the time and no reasonable person would have felt free to leave having been told that he was suspected of possessing illegal drugs and that the canine unit was being summoned to search the vehicle. <u>Id.</u> The defendant was in custody at the time of his questioning and because he hadn't been advised of his <u>Miranda</u> rights the court found that the statements were inadmissible. <u>Id.</u>

"[T]he <u>Miranda</u> safeguards come into play whenever a person in custody is subjected to either express questioning or its functional equivalent," <u>Rhode Island v. Innis</u>, 446 U.S. 291, 300-301 (1980) - the latter means "any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." <u>Id.</u> at 301. Statements that aren't the result of police interrogation but are instead volunteered are not subject to

Miranda. Miranda, 384 U.S. at 478; United States v. Abdulla, 294 F.3d 830, 835 (7th Cir. 2002).

No reasonable person in Mr. Richardson's place would have felt free to leave from the instant Deputy Smythe pulled the drugs from Mr. Richardson's pocket. It was reasonable to believe that the "What's this?" question would illicit an incriminating response. Mr. Richardson's response ("You know what it is") must be suppressed.

ii.

After being handcuffed and placed in the squad car, Mr. Richardson continued to make incriminating statements about his ability to get access to large amounts of cocaine and marijuana and what could he do to make this go away. Mr. Richardson argues that these statements must have been elicited by questions by Deputy Smythe; otherwise, Deputy Smythe wouldn't have told Detective Shortt, "you wanted a name, I got you a name." Under the circumstances of this case, that statement is too weak a foundation to support an inference that Deputy Smythe questioned Mr. Richardson. Deputy Smythe denies having done so, and his statement to Detective Sergeant Shortt that he stopped questioning Mr. Richardson because he didn't want to Mirandize him shows that Deputy Smythe — despite his asking "what's this" and inquiring into the odor of Mr. Richardson's sweater — knew the importance of warnings if questioning was to take place. The context of the "I got you a name" statement doesn't appear on this record, and

stands in the shadow of Mr. Richardson having volunteered statement after statement to Deputy Boswell, who barely spoke to Mr. Richardson.

Apart from the two questions already noted, Deputy Smythe didn't question Mr. Richardson after Mr. Richardson was in custody.

A <u>Miranda</u> violation of an initial incriminating statement raises the question of whether a defendant's subsequent statements are admissible. The "fruit of the poisonous tree" doctrine hasn't been extended to non-coercive <u>Miranda</u> violations.

> It is an unwarranted extension of *Miranda* to hold that a simple failure to administer the warnings, unaccompanied by any actual coercion or other circumstances calculated to undermine the suspect's ability to exercise his free will, so taints the investigatory process that a subsequent voluntary and informed waiver is ineffective for some indeterminate period.... [T]he admissibility of any subsequent statement should turn in these circumstances solely on whether it is knowingly and voluntarily made.

<u>Oregon v. Elstad</u>, 470 U.S. 298, 309 (1985). The Court continued, "absent deliberately coercive or improper tactics in obtaining the initial statement, the mere fact that a suspect has made an unwarned admission does not warrant a presumption of compulsion" as to subsequent statements. <u>Id.</u> at 314. Thus, "a suspect who has once responded to unwarned yet uncoercive questioning is not thereby disabled from waiving his rights and confessing after he has been given the requisite *Miranda* warnings." <u>Id.</u> at 318.

The court of appeals has applied the <u>Elstad</u> rationale to subsequent voluntary statements made by a defendant who hadn't waived his <u>Miranda</u> rights. In <u>United States v. Abdulla</u>, 294 F.3d 830, 832 (7th Cir. 2002), agents placed the

defendant under arrest as he was getting off a plane at an airport and immediately asked, "Do you know why you are being arrested?" Id. The defendant responded, "I robbed a bank, everyone knows I robbed a bank." Id. During the next twenty minutes, the defendant repeated this and other incriminating statements; these latter statements were not in response to any questions by agents or anyone else. Id. The court found it unecessary to address whether the first statement ("I robbed a bank, everyone knows I robbed a bank") was inadmissible because even if it was, the court would still affirm because the defendant's subsequent identical statements were admissible. Id. at 834-835. The statements, including the first, was voluntary and the latter statements weren't made in response to any question posed by the agents. Id. at 836-837.

iii.

When Detective Sergeant Shortt approached Mr. Richardson in the squad car, he began the interchange by asking "How are you?" Even if a simple, civil greeting can somehow be called interrogation simply because the person being greeted is in custody and the greeting is punctuated with a question mark, the "question" elicited no incriminating response. Mr. Richardson simply ignored the question. He simply began volunteering statements that might make him appear more valuable as an informant than as a defendant. Regardless of whether "how are you" constitutes a sort of interrogation that "hello" does not, the use of an interrogative doesn't require that anything be suppressed in this case.

In contrast, in the midst of Mr. Richardson's statements, Detective Sergeant Shortt asked Mr. Richardson where he got the drugs Deputy Smythe had plucked from Mr. Richardson's pocket. However inadvertent it might have been, and however easy it might have been to redirect Mr. Richardson's stream of self-incriminating statements, that was a question designed to elicit incriminating information, asked when Mr. Richardson was in custody and unadvised of his <u>Miranda</u> rights. Mr. Richardson's statement that he got the drugs in South Bend must be suppressed. But nothing else Mr. Richardson said to Detective Sergeant Shortt suffers any constitutional shortcoming.

### III

For the foregoing reasons, the court GRANTS IN PART AND DENIES IN PART the defendant's motion to suppress (doc. #13) as follows:

A. The court SUPPRESSES:

1. evidence of Deputy Smythe's question "What's this" and Mr. Richardson's response;

2. evidence of Deputy Smythe's question about the odor of Mr. Richardson's sweater and Mr. Richardson's response;

3. evidence of Detective Shortt's question about where Mr. Richardson obtained the drugs Deputy Smythe found in his pocket and Mr. Richardson's response; and

4. all evidence of the interview on November 9, 2009.

B. The court DENIES the motion to suppress in all other respects.

SO ORDERED.

ENTERED: March 18, 2010

_____/s/ Robert L. Miller, Jr._____
Judge
United States District Court